UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KRISTOPHER LAMBRIGHT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-01569-SEB-DLP |
| CRAIG GRAGE, et al. | ) ) ) |
| Defendants. | ) |

**Order Denying Defendants' Motion for Summary Judgment
and Directing Defendants to Respond**

Plaintiff Kristopher Lambright, an Indiana prisoner currently incarcerated at the Westville Correctional facility, alleges the defendants violated his rights under the First Amendment by denying him a kosher diet while he was incarcerated at the Reception Diagnostic Center (RDC) in Plainfield, Indiana.

The defendants filed a motion for summary judgment on June 26, 2019. Dkt. 55. Lambright filed a corrected response opposing the motion, and the defendants filed a reply. Dkt. 69, dkt. 74. Lambright moved for leave to file a belated surreply, dkt. [76], which is now **granted**. The defendants' motion for summary judgment is fully briefed.

The defendants argue that Lambright's claims are barred under the exhaustion provision of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), which requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit in federal court. Lambright argues in response that prison staff thwarted his efforts to fully exhaust by failing to provide him with a copy or adequate explanation of the grievance process and for failing to review his formal grievance within the timeframe required by the grievance process. For the reasons explained

below, the defendants' motion for summary judgment, dkt. [55], is **denied** and further proceedings will be directed.

## I. Material Facts

A. *Undisputed Material Facts*

RDC is operated by the Indiana Department of Correction (IDOC). Incoming prisoners are temporarily housed at RDC and then transferred to other IDOC facilities for long-term placement.

The offender grievance process at RDC has three steps. Dkt. 55-2, pp. 8-13. First, the prisoner must file a formal grievance within ten business days of the incident after informal attempts to resolve the grievance have failed. *Id.* at 9-11. Second, the prisoner must file a grievance appeal within five business days of receiving the grievance response. *Id.* at 11-12. Third, the prisoner must file a final appeal within five business days of receiving the appeal response. *Id.* at 12-13. Deadlines may be extended for extenuating circumstances. *Id.*

Formal grievances must be submitted to the RDC grievance specialist. *Id.* at 9. The formal grievance must comply with the standards set forth in the grievance process or it will be rejected. *Id.* at 9-10. The grievance specialist must decide whether to accept or reject the formal grievance within five business days of receiving it. *Id.* at 10. If the grievance specialist rejects the formal grievance, it is returned to the prisoner by the next business day with an explanation for the rejection. *Id.* The prisoner then has five business days to resubmit a corrected formal grievance. *Id.* A formal grievance that relates to more than one incident will be rejected. *Id.*

If the prisoner does not receive a notice that the formal grievance was either accepted or rejected within five business days, he must notify the grievance specialist. *Id.* The grievance specialist will then investigate the issue and respond to the prisoner within five business days. *Id.*

If a prisoner initiates a grievance at RDC and is transferred to another facility before the grievance is resolved, he may continue to exhaust his administrative remedies through RDC. Dkt. 55-2, p. 14.

Lambright was incarcerated at RDC from April 11, 2018, until he was transferred to another facility on May 9, 2018. Dkt. 18, p. 1; dkt. 38, p. 1. He was not given a copy of the 15-page grievance process upon his arrival at RDC. Dkt. 69, p. 4. Instead, he was given a prisoner handbook that contained documentation about the grievance process. Dkt. 55-1, p. 2.

The documentation Lambright received in his handbook is incomplete. Dkt. 61-1. The first page ends in the middle of a numbered list describing the steps of the grievance process. *Id.* The second page begins in the middle of a different numbered list describing the duties of the grievance specialist after the prisoner has filed a formal grievance. *Id.* The incomplete documentation Lambright received failed to inform him about many aspects of the grievance process. Most importantly for purposes of this motion, the documentation did not mention that prisoners may continue to pursue a grievance against RDC if they are transferred to another facility before the grievance is resolved. *Id.*

Lambright wrote the food service supervisor on April 12, 2018, to request a kosher diet. Dkt. 2, p. 9. He wrote the chaplain about his request for a kosher diet on April 13, 2018. *Id.*; dkt. 2-1, p. 3. He made additional informal requests for a kosher diet to Warden Grage, Deputy Warden Bennett, and the chaplain. Dkt. 2, p. 9-10.

After making informal requests, Lambright proceeded to the formal grievance process. He placed a formal grievance in the RDC institutional mailbox on April 19, 2018, complaining that (1) his requests for a kosher diet were ignored; and (2) RDC had no Jewish reading materials but did have Christian reading materials. Dkt. 55-4; dkt. 69, p. 2.

Grievance Specialist Guy Roseberry received Lambright's formal grievance on May 4, 2018. Dkt. 55-1, p 5; dkt. 55-3; dkt. 55-4. Roseberry rejected the grievance because he believed it related to multiple issues or events.[1] Dkt. 55-5. He returned the grievance to Lambright with a return of grievance form on May 15, 2018. *Id.* The return of grievance form explained the reason for the rejection and included the following language: "If you choose to correct the problem(s) listed above, you must do so and re-submit this form within five (5) business days." *Id.*

Lambright had already been transferred to another facility by the time he was notified that his formal grievance was rejected. Dkt. 18, p. 1; dkt. 38, p. 1; dkt. 69, p. 3. He did not resubmit a corrected formal grievance. Dkt. 55-1, p. 5; dkt. 55-3. He filed this lawsuit on May 23, 2018, without completing the grievance process. Dkt. 2; dkt. 55-1, p. 5.

B. *Disputed Material Facts*

The parties dispute whether Lambright was informed of the grievance process upon his arrival at RDC. Roseberry submitted an affidavit claiming that prisoners are "informed about the Grievance Procedure shortly after they arrive[] at the RDC, during their orientation. They [are] also informed that if they [have] any questions about how to complete the grievance procedure, they would speak with Officer Aidoo," who is a screening officer and a grievance officer.[2] Dkt. 74-1, ¶ 3.

---

[1] The documentation Lambright received did not inform him that a grievance may only relate to a single issue or event.

[2] Lambright claims that Roseberry was not present during his orientation. Dkt. 77, p. 1-2. Roseberry does not claim to have attended Lambright's orientation, but he does claim to have knowledge about RDC's routine orientation practices. His affidavit is therefore admissible to establish that RDC's practice is to inform prisoners about the grievance process during orientation, but it is not admissible to prove what Lambright was told at his specific orientation. See Fed. R. Evid. 406; Fed. R. Evid. 602; Fed. R. Civ. Proc. 56(c)(4) (Affidavits or declarations in support of

4

Officer Aidoo submitted an affidavit claiming to be "familiar with the offender Kristopher Lambright, who is the plaintiff in the above captioned lawsuit." Dkt. 74-2, ¶ 3. He also claims, "Lambright also never asked me for a copy of the Grievance Procedure, and I have never seen any requests from Lambright for a copy of the procedure come to the law library at RDC." *Id.*, ¶ 4.

Lambright filed a verified surreply claiming he was not informed of the grievance process during orientation, which "consisted of having his picture taken for his identification card; meeting with medical, dental, drug abuse, psychology, and classification staff; having his blood drawn; and having his mouth swabbed for DNA testing." Dkt. 77, ¶ 1.a. He also claims that he submitted numerous requests to speak to Officer Aidoo, to receive a copy of the grievance process, and to use the RDC law library but never received a response. *Id.*, ¶ 2.b. He claims if he had tried to enter Officer Aidoo's office to ask questions about the grievance process, he would have faced disciplinary sanctions. *Id.*

## II. Discussion

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson*,

---

a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.).

477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006). So here, the defendants bear the burden of demonstrating that Lambright failed to exhaust all available administrative remedies before he filed this suit. *Id.* at 681.

"If administrative remedies are not 'available' to an inmate, then an inmate cannot be required to exhaust." *Kaba*, 458 F.3d at 684; *see also King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."). Administrative remedies are primarily

6

"unavailable" to prisoners where "affirmative misconduct" prevents prisoners from pursuing administrative remedies. *Dole*, 438 F.3d at 809 (remedies unavailable where prison officials "do not respond to a properly filed grievance"); *see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir.2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba*, 458 F.3d at 680, 686 (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances"); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004) (remedies unavailable where prison personnel prevent prisoner access to grievance forms).

But "unavailability" extends beyond "affirmative misconduct" to omissions by prison personnel, particularly failing to inform the prisoner of the grievance process. *See King*, 781 F.3d at 895–96 (remedies unavailable where prisoner transferred between two correctional facilities had no access to grievance process and where later allotted time for filing grievance was impracticable); *White v. Bukowski*, 800 F.3d 392, 397 (7th Cir.2015) (remedies unavailable where prisoner was "[u]ninformed about any deadline for filing a grievance"). It is not incumbent on the prisoner "to divine the availability" of grievance procedures. *King*, 781 F.3d at 896. Rather, prison officials must inform the prisoner about the grievance process. *See id.*; *Kaba* 458 F.3d at 684. The prison cannot shroud the prisoner in a veil of ignorance and then hide behind a failure to exhaust defense to avoid liability. *See King*, 781 F.3d at 893 ("Prison authorities cannot immunize themselves from suit by establishing procedures that in practice are not available." (citation omitted)); *see also Ross v. Blake*, 136 S. Ct. 1850 (2016).

Here, the failure of prison officials to provide Lambright with a full description of the grievance process, the delays caused by prison officials' own failure to follow the grievance

7

process, and the inherently temporary nature of incarceration at RDC made the grievance process unavailable. No prisoner under these circumstances could expect to complete the RDC grievance process before being transferred to another facility. It was therefore incumbent upon prison officials to inform Lambright that he could pursue his RDC grievance from his new facility. Because he was not informed that he still had potential administrative remedies against RDC after being transferred, these remedies were not "available" to him under the PLRA.

Defendants misconstrue the issue as a failure on Lambright's part to meet certain deadlines. They argue that Lambright "could and should have requested an extension of his grievance deadline and on his grievance appeal deadline, and informed RDC of the alleged extenuating circumstances." Dkt. 75, p. 3. The issue, however, is not that Lambright missed a deadline. He simply failed to pursue his RDC grievance from his new facility. As explained above, this failure occurred because Lambright was not fully informed about the process.

### III. Summary and Direction of Further Proceedings

Lambright's motion to file a belated surreply, dkt. [76], is **granted**. Defendants' motion for summary judgment, dkt. [55], is **denied**.

The record before the Court shows that Lambright is entitled to summary judgment on the defendants' affirmative defense of exhaustion. Pursuant to Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in Lambright's favor on this issue. The defendants have until **January 24, 2020**, to respond to the Court's proposal. Alternatively, defendants may withdraw their affirmative defense by this date.

**IT IS SO ORDERED**.

Date: 01/08/2020

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

8

Distribution:

KRISTOPHER LAMBRIGHT
266449
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Ilene M. Smith
INDIANA ATTORNEY GENERAL
Ilene.Smith@atg.in.gov